## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

JEREMIAH H. SALAMON,

        Plaintiff

    v.

STEVIE J. KNIGHT,

        Defendant

Civil No. 23-2220 (RMB-AMD)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon the motion to appoint pro bono counsel in this prisoner civil rights action by Plaintiff Jeremiah H. Salamon, appearing *pro se*. (Motion to Appoint Counsel, Dkt. No. 5.) Plaintiff's complaint arises out of an incident in FCI Fort Dix on May 27, 2020, which led to prison disciplinary charges against Plaintiff for violating offense code 201, fighting with another person. After a hearing before a Disciplinary Hearing Officer ("DHO"), Plaintiff was found guilty and sanctioned to loss of good conduct time, among other things. Plaintiff initially filed this case as a hybrid habeas petition/civil rights action in *Salamon v. Knight*, 23-72 (RMB) (D.N.J.) ("Civil Action No. 23-72). On April 20, 2023, this Court severed the civil rights claims from the habeas petition and opened this new civil rights action. (Compl., Dkt. No. 1.) This Court administratively terminated this action because Plaintiff had not paid the $402 filing fee for a civil

rights action, nor had he alternatively submitted an application to proceed *in forma pauperis* under 28 U.S.C. § 1915(a).[1]  On May 12, 2023, Plaintiff submitted  a supplemental brief in support of his civil rights complaint (Dkt. No. 5), which this Court construes as a supplement to the complaint.  Therefore, the complaint consists of the documents filed under Docket Entry Nos. 1 and 5.  Plaintiff subsequently paid the filing fee.  Therefore, the Court will reopen this action, and screen the supplemented complaint for summary dismissal pursuant to 28 U.S.C. § 1915A(b).  Finally, the Court will address Plaintiff's motion for appointment of counsel.

## I.    *SUE SPONTE* DISMISSAL

When a prisoner files a civil action seeking redress from a governmental entity or officer or employee of a governmental entity, courts must review the complaint and *sua sponte* dismiss any claims that are:  (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1, 2).  "[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions."  *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citing *e.g.*, *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).  Thus, ["t]o survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

---

[1] Plaintiff's habeas challenge to his prison disciplinary proceeding is pending in  *Salamon v. Knight*, Civil Action No. 23-472(RMB).  The documents filed under Docket Entry Nos. 6 and 7 in this matter relate to Plaintiff's habeas petition.  Therefore, the Court will direct the Clerk to file copies of those documents in Civil Action No. 23-472.

plausible on its face.'" *Allah*, 229 F.3d, at 122-23 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S., at 678 (citing *Twombly*, 550 U.S. at 556  "[A] district court must accept as true all factual allegations and all reasonable inferences that arise from those allegations, viewed in the light most favorable to the plaintiff." *Id.* Recitation of the elements of a claim coupled with conclusory statements fail to state a claim.  *Twombly*, 550 U.S., at 544.

The Court must also determine which of Plaintiff's claims may proceed in this civil rights action, and which claims must be resolved in his habeas petition under 28 U.S.C. § 2241.  Claims must be brought in a habeas proceeding, thus, a civil rights action is barred, if success on the claims would necessarily demonstrate the invalidity of confinement or its duration. *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005).  This is true regardless of the type of relief sought "or the target of the suit (conviction or internal prison proceedings)." *Id.* at 82.  Prisoners, however, may use a civil rights action to seek an injunction "enjoining the prospective enforcement of invalid prison regulations." *Id.*  In other words, in civil rights actions attacking prison disciplinary

proceedings, prisoners may challenge the wrong procedures, not the wrong result.
*Id.* at 79-80 (citations omitted).

## II.    DISCUSSION

### A.    Jurisdiction

"[I]t is established practice … to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution[.]" *Bell v. Hood*, 327 U.S. 678, 684 (1946). "[F]ederal district courts ... have jurisdiction over claims by federal prisoners against federal prison officials seeking vindication of their constitutional rights under [] 28 U.S.C. § 1331[], and may obtain relief in the nature of [] injunction[]." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1236 (10th Cir. 2005) (citations omitted). Prospective injunctive relief, with respect to prison conditions, is limited to the extent "necessary to correct the violation of the Federal right of a particular plaintiff." 18 U.S.C. § 3626(a). Therefore, this Court has jurisdiction under 28 U.S.C. § 1331 over Plaintiff's constitutional claims for injunctive relief, limited by § 3626(a). Whether the Court should imply a *Bivens* damages remedy for Plaintiff's claims attacking the prison disciplinary procedures is discussed below.

### B.    The Complaint

#### 1.    Factual Allegations

Stevie Knight, the warden of FCI Fort Dix, is the sole defendant named in the complaint.[2] Plaintiff makes the following allegations of fact, which this Court must accept as true for purposes of screening Plaintiff's civil rights complaint for dismissal. On May 27, 2020, in FCI Fort Dix housing unit 5841, Plaintiff entered the television room and sat on a concrete bench, which was affixed to the floor. Inmates Edward Leon ("Leon") and Shawn Rockey ("Rockey") were sitting on the bench, and Plaintiff sat between them because he wanted to speak to Leon. Rockey started a verbal argument with Plaintiff because he was angry that Plaintiff sat on the bench, rather than an empty chair. Plaintiff responded calmly but Rockey became angry and stood up, threatening to hit Plaintiff with the cane he held in his left hand. Plaintiff told Rockey, "it is not going to end the way you want it . . .," at which time Rockey hit Plaintiff on the left side of his head, and threw a glancing blow at his left eye. When Rockey swung again, Plaintiff stood up to defend himself. Plaintiff was caught between the cane-wielding Rockey and the concrete bench they had been sitting on; thus, he had no avenue for escape. Plaintiff "plowed into" Rockey to get past him, and Rockey fell backward over the concrete bench. Plaintiff kneeled over Rockey and asked if he had enough.

Rockey got to his feet, and Plaintiff saw that blood was dripping from his head. Plaintiff was concerned, but Rockey blocked the doorway and attacked Plaintiff again. Plaintiff deflected the attack and pushed Rockey to the ground. As

---

[2] If Stevie Knight is no longer the warden of FCI Fort Dix, for purposes of injunctive relief, the present warden may be substituted under Federal Rule of Civil Procedure 25(d).

Plaintiff was leaving the room, Rockey pursued him, swinging his cane at Plaintiff's head.  Plaintiff deflected this third attack with his left arm.  After leaving the room, Plaintiff took stock of his injuries, he had red marks on his forehead and a lump on his arm.  Shortly thereafter, Plaintiff saw Leon and asked if he would act as Plaintiff's witness if anything came of the incident in the television room, and Leon responded that he would.

Later that morning, Plaintiff was working at his prison job, and the shop foreman called Plaintiff to his office.  News of the altercation in the television room had spread.  Plaintiff was taken to the medical unit for an examination.  The physician did not find any evidence that Plaintiff had been fighting but asked Plaintiff if something had happened.  Plaintiff said nothing, but he was taken to an interview with Lieutenant M. Fernandez, with the Special Investigation Section ("SIS").

Lieutenant Fernandez told Plaintiff he knew that Plaintiff had been in a fight, so he might as well tell him what happened.  Plaintiff had nothing to say.  Lieutenant Fernandez told Plaintiff that he had information from a half dozen inmates that Plaintiff and Rockey had a fight.  Rockey had injuries, but Plaintiff did not, so Lieutenant Fernandez suggested he could pin the fight on Plaintiff if he did not tell his side of the story.  Plaintiff then told Lieutenant Fernandez his account of the incident, as it is described above, stressing that he acted in self-defense because Rockey was larger, he was armed with a cane, and Plaintiff could not escape the room because he was trapped between Rockey and the permanently affixed concrete

bench.  Plaintiff showed Lieutenant Fernandez the red mark on his head and welt on his arm, and Lieutenant Fernandez characterized the injuries as defensive wounds. Plaintiff was escorted to the SHU, where he wrote a statement of everything that had occurred.

Detective J. Marcucci ("Marcucci") delivered an incident report to Plaintiff on June 8, 2020, charging him with violating prison code 201, fighting with another person.  Plaintiff noted inaccuracies in Lieutenant Fernandez's report of the incident, including inaccurate quotations from Plaintiff.  Marcucci told Plaintiff someone would meet with him to address the alleged inaccuracies.  On June 10, 2020, Plaintiff was released from the SHU and reassigned to Unit 5811, and Rockey was assigned to a different housing unit.  On June 12, 2020, Unit Housing Counselor J. Cuevas ("Cuevas") took Plaintiff's verbal and written statements, where Plaintiff corrected the inaccuracies in the incident report.  Plaintiff told Cuevas that he wanted Gary Moody for a staff representative at the disciplinary hearing, and he wanted to call witnesses, Edward Leon and someone named "Wilson," and others who were present in the television room at the time of the incident.  Cuevas listed only Leon as a witness, explaining to Plaintiff that he could not find "Wilson" in the computer index, and Plaintiff could call other witnesses at the time of the hearing.  The disciplinary hearing was postponed twice due to the coronavirus pandemic.

Plaintiff's disciplinary hearing was held on September 2, 2020, before J. Darden, who served as the discipline hearing officer ("DHO").  Gary Moody appeared by phone as Plaintiff's staff representative.  Moody had been unable to

obtain any witness statements, but he noted Plaintiff had the right to call witnesses. Plaintiff requested to present the testimony of Edward Leon and someone named "Wilson," but the DHO denied the request.

Plaintiff began the hearing by asking the DHO, "[b]y what power do you have to conduct this hearing without a record and without notice to me as to the nature and cause of my liability to loss of liberty and property by your adjudication, as required by the Fourteenth and Fifth Amendments of the United States Constitution?" The DHO responded by threatening to send Plaintiff to the SHU and hold the hearing without him. The hearing commenced and Plaintiff submitted a copy of his written statement of the incident, but the DHO refused to read it. He found Plaintiff guilty of fighting with another person, and imposed the following sanctions: a) 60 days disciplinary segregation (suspended for clear conduct); b) 180 days loss of visiting privileges; and c) 27 days loss of good conduct time. There were collateral consequences of having been found guilty of this high level prison offense, including: increase in custody classification score; loss of employment in UNICOR; loss of housing in Honor Unit 5841; loss of preferred housing in a 2-man unit for one year; and a permanent record of a violent offense that might affect future decisions by staff and conditions of supervised release.

As soon as Plaintiff received the DHO report on November 5, 2020, he went to "Staff Alley" to obtain a BP-10 form to appeal the DHO's decision. Only one staff person was present, Team Case Manager Bradley Vogt, who told Plaintiff to get the form from his counselor. The next day, Plaintiff asked Unit Team Counselor Jose

Cuevas for a BP-10 form.  Cuevas refused, telling Plaintiff to live with the DHO's

decision.

### 2.    Legal Theories

Plaintiff disavows bringing his claims under the Administrative Procedures

Act ("APA").   In his own words, Plaintiff seeks relief for:

- Refusal to provide the [f]orms required by law for [a]ccess to the [c]ourts — a First (1st) Amendment claim;

- Refusal by the investigative and adjudicative body to consider exculpatory evidence, that of a self-defense — a Fourteenth (14th), Fifth (5th), and Second (2nd) Amendments claim, creating a <u>Brady</u> violation;

- Failure to keep me free from [p]ersonal [i]njury — an Eighth (8th) Amendment Claim;

- Refusal, by the adjudicating body, to exercise my [r]ight to call [w]itnesses — a Fourteenth (14th) and Fifth (5th) Amendments claim;

- Adjudicating in a [d]isciplinary [h]earing in a [c]ourt/[h]earing of [n]o [a]uthority — a Fourteenth (14th) and Fifth (5th) Amendments [d]ue [pr]rocess claim;

- Disallowance of 27 days of [e]arned [g]ood [c]onduct time — a Fourteenth (14th) and Fifth (5th) Amendments [d]ue [p]rocess claim, and an Eighth (8th) Amendment Cruel and Unusual Punishment claim;

- Failure to provide and maintain [s]ecurity [d]evices — an Eighth (8th) Amendment Cruel and Unusual Punishment claim;

- Forced exposure to a known [m]entally [i]ll inmate — an Eighth (8th) Amendment Cruel and Unusual Punishment claim, and Equal Protection violation by not housing me with like prisoners;

- Negligence to properly train and ensure facility staff properly investigate all situations, including those that may result in an outcome that is unfavorable to the facility — a Fourteenth (14th) and Fifth (5th) Amendments [d]ue [p]rocess claim;

- Entering into the facility [r]ecord inaccurate information — a Fourteenth (14th) and Fifth (5th) Amendments [d]ue [p]rocess claim, and an Eleventh (11th) Amendment Equal Protection claim and fraud!;

- Designation of a [b]adge of [i]nfamy on me, namely that of being a "violent" offender, a Fourteenth (14th) and Fifth (5th) Amendments [d]ue [p]rocess claim, and an Eleventh (11th) Amendment Equal Protection claim and fraud!

(Dkt. No. 1-1 at 23-24.)

Plaintiff's due process claims arise under the Fifth Amendment.  "T[]he Fourteenth Amendment only applies to actions of the states and not to the federal government[]."  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001).

### 3.  Relief Requested

For relief, Plaintiff seeks to expunge the incident report;  and

- expunge all sanctions imposed; expunge from all institutional records any reference to Plaintiff as a "violent" offender; return Plaintiff's custody classification level to where it was before the DHO finding of guilt;

- order FCI Fort Dix to record/transcribe prison disciplinary hearings for review on appeal;

- order FCI Fort Dix to use independent, third party (non-BOP affiliated) DHOs for hearings that may result in loss of good conduct time;

- order DHOs must call requested witnesses, as long as it does not interfere with institutional security, or alternatively require written statements from witnesses;

- retrain all staff on the First Amendment right to petition for grievances and right of access to the courts;

- retrain all staff on the regulations governing the BOP Administrative Remedy Program, and appoint a Special Master to obtain compliance with the law;

- order the Warden of FCI Fort Dix to train staff and inmates in conflict de-escalation, provide and maintain cameras in common areas, and provide and maintain duress buttons in common areas to obtain assistance in emergencies;

- order the Warden of FCI Fort Dix to comply with the Constitution, under punishment of Contempt under 18 U.S.C. § 410;

- enter an injunction to preclude retaliation by BOP staff;

- order removal of permanently affixed concrete benches in FCI Fort Dix housing unit 5841;

- any other relief deemed appropriate;

- reimbursement of filing fees, fees for legal work performed as a *pro se* litigant, and damages[.]

(Dkt. No. 1-1 at 76-77.)

### 4.   Damages and Fees

In his supplement to the complaint (Dkt. No. 5), Plaintiff adds a request for reimbursement of filing fees, fees for legal work performed as a *pro se* litigant, and damages.  Certain costs, including filing fees, may be recoverable by the prevailing party under 28 U.S.C. § 1920.  However, the Civil Rights Attorney's Fees Award Act, "42 U.S.C. § 1988 does not entitle a non-lawyer, *pro se* litigant to attorney's fees."  *Pitts v. Vaughn*, 679 F.2d 311, 313 (3d Cir. 1982).

### 5.   *Bivens* Claims

By seeking damages against a federal actor in his supplemental complaint (Dkt. No. 5), Plaintiff asks the Court to imply a *Bivens* damages remedy, because there is no federal analog to civil rights claims against state actors under 42 U.S.C. § 1983.  *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) ("Congress did not create an

analogous statute for federal officials[,]" comparable to that of § 1983 against state officials).  When a plaintiff seeks an implied damages remedy, courts must undertake a two-part inquiry:  (1) determine whether the case presents a new context from the three cases where the Supreme Court has implied a *Bivens* damages remedy; and (2) if the case presents a new context, determine "if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"  *Egbert v. Boule*,  596 U.S. 482, 492 (2023) (quoting *Ziglar*, 137 S. Ct., at 1858)).  These two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  *Id.*  Moreover,

> a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, "an alternative remedial structure." *Ziglar*, 582 U. S., at ——, 137 S. Ct., at 1858; *see also Schweiker* [*v. Chilicky*], 487 U.S. [412], 425, 108 S. Ct. 2460 [1988]. If there are alternative remedial structures in place, "that alone," like any special factor, is reason enough to "limit the power of the Judiciary to infer a new *Bivens* cause of action." *Ziglar*, 582 U. S., at ——, 137 S. Ct., at 1858.

*Id.* at 493.

Plaintiff's due process claims arise out of his prison disciplinary proceeding and present a new *Bivens* context from the three cases where the Supreme Court implied a constitutional damages remedy against a federal actor.  *See Egbert*,  596 U.S. at 490-91 (citing *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971) (implying damages remedy for Fourth

Amendment claim "against federal agents who allegedly manacled the plaintiff and threatened his family while arresting him for narcotics violations"); *Davis v. Passman*, 442 U.S. 228 (implying damages remedy "for a former congressional staffer's Fifth Amendment sex-discrimination claim"); *Carlson v. Green*, 446 U.S. 14, 100 (1980) (implying damages remedy "for a federal prisoner's inadequate-care claim under the Eighth Amendment") (quotations in *Egbert*)).  Plaintiff also raises an Eighth Amendment claim for failing to protect him from inmate violence.  This claim likewise arises in a new *Bivens* context.  *See*, *King v. Ponce*, No. CV 21-5628 (RMB/AMD), 2023 WL 8253060, at *7 (D.N.J. Nov. 29, 2023); *Bulger v. Hurwitz*, 62 F.4th 127, 139 (4th Cir. 2023).

    Plaintiff has two alternative remedies for his claims, the Bureau of Prisons administrative remedy program, 28 C.F.R. § 542.10 *et seq.*, and an action for injunctive relief.  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (declining to imply *Bivens* damages remedy for Eighth Amendment claim to prisoners in privately-operated federal prison because alternative remedial schemes existed).  It does not matter that "'existing remedies do not provide complete relief.'"  *Egbert*, 596 U.S., at 493 (quoting *Bush* [*v. Lucas*], 462 U.S. [367], 388 [1983]), this special factor alone [existence of alternative remedial scheme] counsels hesitation against implying a *Bivens* damages remedy.  For these reasons, the Court will dismiss Plaintiff's *Bivens* claims for damages (alleged in his supplemental complaint, Dkt. No. 5).

### C.   Whether Plaintiffs' Claims For Injunctive Relief Necessarily Imply Invalidity of the Disciplinary Sanctions Imposed Against Him or Whether the Claims May Proceed in this Civil Rights Action

Plaintiff's hybrid habeas petition/complaint (Dkt. No. 1) is organized into the following seven grounds for relief.

### 1. Ground One

In Ground One, Plaintiff alleges: (1) Lieutenant Fernandez issued an inaccurate incident report; (2) Housing Unit Counselor Cuevas took Plaintiff's statement to correct the errors in the incident report but did not change the report; and (3) DHO Dardin credited the false incident report, refused to call eyewitnesses to correct the record, and found Plaintiff guilty of fighting.[3]  This Fifth Amendment due process challenge to Plaintiff's prison disciplinary proceeding,[4] if proven, would necessarily invalidate the DHO's finding of guilt and the sanctions imposed.

---

[3] This Court construes Plaintiff's allegation of "Entering into the facility [r]ecord inaccurate information — a Fourteenth (14th) and Fifth (5th) Amendments [d]ue [p]rocess claim, and an Eleventh (11th) Amendment Equal Protection claim and fraud" under Ground One of the Complaint.  There is no equal protection clause in the Eleventh Amendment. "Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001).  Plaintiff has not alleged facts establishing the elements of an Equal Protection claim. *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 (3d Cir. 2016) ("To state an equal protection claim, [the plaintiff] must allege that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]")

[4] *See, e.g.*, *Powers v. Warden Allenwood USP*, No. 20-2405, 2022 WL 17690157, at *3 (3d Cir. Dec. 15, 2022) (challenging deprivation of good conduct time without procedural due process guaranteed by the Fifth Amendment).

Therefore, Ground One must be resolved in Plaintiff's habeas proceeding in Civil Action No. 23-72, and the Court will dismiss Ground One from this action.

### 2.    Ground Two

In Ground Two, Plaintiff alleges he proved that he acted in self-defense when attacked by another inmate on May 27, 2020; therefore, he was not guilty of a prison infraction.  Plaintiff also characterizes this claim as follows:  "[r]efusal by the investigative and adjudicative body to consider exculpatory evidence, that of a self-defense — a Fourteenth (14th), Fifth (5th), and Second (2nd) Amendments claim, creating a *Brady* violation."  This claim, properly raised only as a Fifth Amendment due process challenge, if proven, would necessarily invalidate the DHO's finding of guilt and the sanctions imposed.  Ground Two must be resolved in Plaintiff's habeas proceeding in Civil Action No. 23-72, and the Court will dismiss Ground Two from this action.

### 3.    Ground Three

In Ground Three, Plaintiff alleges that after the altercation with Rockey, Plaintiff learned Rockey had mental disorders and an extensive, well known history of attacking other inmates.  Plaintiff alleges staff knew or should have known that Rockey posed a danger to the safety of other inmates, and staff failed to protect Plaintiff from assault by Rockey.  Plaintiff further alleges Rockey should not have been housed in general population; FCI Fort Dix failed to provide training to staff and inmates on conflict de-escalation for handling violent, mentally ill inmates; staff failed to provide security cameras or emergency devices, such as distress buttons, to

protect inmates from each other, and the concrete bench affixed to the floor in the television room posed a substantial risk to prisoner safety, in the event of a physical altercation between inmates. This Eighth Amendment failure to protect claim does not imply the invalidity of the DHO's decision. Therefore, it may proceed in this civil rights action for injunctive relief.

### 4.   Ground Four

In Ground Four of the complaint, Plaintiff alleges DHO Dardin acted without authority because the Constitution and the APA require a true judicial officer, with no allegiance to the Executive Branch, to preside over prison disciplinary hearings. This claim, insofar as Plaintiff seeks to void the DHO's decision and sanctions imposed, must be resolved in Plaintiff's habeas proceeding in Civil Action No. 23-72. Plaintiff's request for prospective injunctive relief, specifically, his request to bar prison staff from presiding as disciplinary hearing officers, may be resolved in this civil rights action. Plaintiff, however, fails to state a Fifth Amendment due process claim.

The Supreme Court, in *Wolff v. McDonnell*, held that "prison disciplinary hearings are not part of criminal prosecution, and inmates' rights at such hearings may be curtailed by the demands and realities of the prison environment." *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991) (citing *Wolff*, 418 U.S. 539, 556-57 (1974)). However, "a prisoner has a constitutionally protected liberty interest in good time credit[,]" and has a due process right to the procedures described in *Wolff*. *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991). The due process procedures required for

16

depriving a prisoner of good conduct time include: "(1) advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken[;]" (2) "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals[;]" (3) "[w]here an illiterate inmate is involved … or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case," assistance from an inmate or staff to prepare a defense; and (4) an impartial decisionmaker.  *Wolff v. McDonnell*, 418 U.S. 539, 570-71.  Due process is satisfied if the decisionmaker was not involved in investigating or prosecuting the prisoner's case.  *Redding v. Holt*, 252 F. App'x 488, 491 (3d Cir. 2007) (citing *Wolff*, 418 U.S. at 592)); *Greer v. Hogston*, 288 F. App'x 797, 799 (3d Cir. 2008) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir.1974) ("the requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body")).  The Court will dismiss Ground Four from this action for failure to state a claim.

### 5.    Ground Five

In Ground Five, Plaintiff alleges DHO Dardin was not an impartial decisionmaker, due to his allegiance to FCI Fort Dix as an employee.  Plaintiff contends the Department of Justice, the Bureau of Prisons, FCI Fort Dix, and its staff have financial incentives to maintain inmates in prison for as long as possible,

because the number of prisoners affects budgets, overtime, and bonuses. Plaintiff alleges BOP staff are financially motivated to reduce good conduct time through the prison disciplinary process. Plaintiff's claim that DHO Dardin was not an impartial decisionmaker, if proven, would invalidate his determination of Plaintiff's guilt and imposition of sanctions. Ground Five must be resolved in Plaintiff's habeas proceeding in Civil Action No. 23-72. However, Plaintiff's Fifth Amendment due process claim for prospective injunctive relief may be resolved in this action. Plaintiff seeks an order requiring a disciplinary hearing to be conducted by "an independent third party mediator or adjudicator who has sworn to uphold the Constitution of the United States who has no affiliation to the Bureau of Prisons." (Dkt. No. 1-1 at 77.)

As noted, in *Wolff* and its progeny, the due process protection of an impartial tribunal requires only that the tribunal may not have direct personal or otherwise substantial involvement in the matter before it. This Court is not persuaded by Plaintiff's assertion that greater protection is required because prison staff are motivated solely by the need to keep all prisoners in prison as long as possible to maintain the BOP's budget and overtime and bonus opportunities. The requirement for "some evidence" to support the DHO's decision is sufficient to guard against the kind of arbitrary decision-making by prison officials or staff who are motivated solely by such budgetary concerns. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Therefore, this Court declines Plaintiff's invitation to

require greater due process protection than that found necessary by the Supreme Court in *Wolff*.

### 6.    Ground Six

In Ground Six, Plaintiff alleges DHO Dardin's failure to call Plaintiff's requested witnesses violated Plaintiff's right to due process.  This claim, if proven, would invalidate the DHO's decision.  Therefore, the claim must be decided in the habeas proceeding, Civil Action No. 23-72.  Plaintiff's Fifth Amendment due process claim for prospective injunctive relief, where he requests a prospective order that "DHOs must call requested witnesses, as long as it does not interfere with institutional security, or alternatively require written statements from witnesses" may proceed in this action.

### 7.    Ground Seven

In Ground Seven, Plaintiff alleges he was prevented from appealing the DHO's decision because BOP staff refused to provide him the necessary BP-10 form. If exhaustion of administrative remedies is asserted as a defense to Plaintiff's habeas proceeding in Civil Action 23-72, it must be resolved in that action.  For Plaintiff's claim for prospective injunctive relief, there is no First Amendment right to a prison grievance procedure.  *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007) (citing *e.g.*, *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir.2001) (collecting cases)).  Plaintiff fails to state a First Amendment right of access to courts claim for prospective injunctive relief because  "inmate(s) need exhaust only such administrative remedies as are 'available.'"  *Ross v. Blake*, 578 U.S. 632, 648 (2016).  If an administrative

remedy program is unavailable to Plaintiff in the future, he will not be deprived of access to the courts because only available remedies must be exhausted. Therefore, Plaintiff fails to allege a First Amendment claim in Ground Seven, and this claim is dismissed without prejudice.

### D.    State Law Claims

Plaintiff asserts state law fraud claims based on his allegation that the incident report contained false statements.  Plaintiff also challenges any reference to him as a violent offender in FCI Fort Dix prison records, claiming such a characterization is fraud in violation of state law.  Fraud claims against federal actors must be brought under the Federal Tort Claims Act, rather than directly under state law.  *See, e.g.*, *Dolan v. U.S. Postal Service*, 546 U.S. 481, 484-85 (2006) ("[t]he Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, constitutes a limited waiver of sovereign immunity over tort claims against the federal government and its agencies.") The United States is the only proper defendant in such an action, and exhaustion of the claim with the appropriate agency, separate from the ordinary prison grievance procedure, is required before bringing suit.  28 U.S.C. §§ 1346(b), 2671-2680.  Therefore, the Court will dismiss the state law fraud claims with prejudice.  This does not preclude Plaintiff from filing an FTCA claim upon exhausting administrative remedies, if appropriate.

## III.    MOTION TO APPOINT COUNSEL

Motions for appointment of pro bono counsel in civil right actions are governed by 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent

any person unable to afford counsel." Here, Plaintiff paid the $402 filing fee, although he submits that he had to borrow funds because he makes only $.29 an hour in his prison employment. (Dkt. Nos. 2 and 5 at 3-4.) The Court will require Plaintiff to submit an IFP application with a copy of his prison trust account statement, solely to aid the Court in its determination of whether Plaintiff is unable to afford counsel. *See Tabron v. Grace*, 6 F.3d 147, 157 n. 5 (3d Cir. 1993) ("Of course, before appointing counsel under § 1915(d), courts should consider whether an indigent plaintiff could retain counsel on his or her own behalf.") The Court will deny Plaintiff's motion for appointment of counsel without prejudice, subject to renewal of the motion when Plaintiff files his affidavit of poverty and account certification.

## IV.   CONCLUSION

For the reasons stated above, the supplemented complaint may proceed in part and is dismissed in part. Plaintiff's motion for appointment of counsel is dismissed without prejudice, subject to renewal.

An appropriate Order follows.

DATE: **December 15, 2023**          s/Renée Marie Bumb
                                     Renée Marie Bumb
                                     Chief United States District Judge